UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| JOSHUA TORRES,<br><br>          Plaintiff,<br><br>     v.<br><br>SECURITAS SECURITY SERVICES USA INC.,<br><br>          Defendant. | Case No.  21-cv-08745-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re:  ECF No. 31] |

Plaintiff Joshua Torres brought this employment action against his former employer, Defendant Securitas Security Services USA, Inc. ("Securitas" or "SUSA").  He alleges that he was wrongfully terminated in violation of California statute.  Defendant filed the instant motion for summary judgment.  ECF No. 31 ("MSJ"); *see also* ECF No. 34 ("MSJ Reply").  Plaintiff opposes the motion.  ECF No. 33 ("MSJ Opp.").  The Court held a hearing on the motion on March 23, 2023.  *See* ECF No. 36.  For the reasons explained below, the Court GRANTS Defendant's motion for summary judgment.

## I.   BACKGROUND

The Court summarizes the evidence presented to it on the motion for summary judgment.  The Court notes that Plaintiff provided no evidence in support of his opposition.  And his Complaint is not verified, so the Court does not accept the allegations in the Complaint as evidence in support of Plaintiff's opposition.

### A.   Hiring and Initial Placements

Defendant is a private security services company.  Torres was employed by Securitas from approximately April 24, 2019 until his termination of employment on or about April 1, 2021.  Amended Declaration of Gina Klomp, ECF No. 31-1 ("Klomp Decl.") ¶ 6.  Upon employment,

Plaintiff acknowledged that the post to which he was assigned was not permanent and could be changed at any time. *Id.* ¶ 7. On April 24, 2018, he signed Defendant's Employment Standards Acknowledgement, which reads:

> I am an employee of Securitas and I am not employed by the client or facility to which I am assigned. I understand that I can expect transfers among facilities from time to time, which may include varying locations, hours, and/or changes in rates of pay, based upon the client contract and business needs of the Company. I understand that work schedules are not guaranteed and that a work week may vary as required by Securitas.

*Id.* ¶ 7, Ex. C. Plaintiff also acknowledged receipt of Defendant's Security Officer Handbook. *Id.* ¶ 8, Exs. D, E; Declaration of Frank Magananimo, ECF No. 31-3 ("Magananimo Decl."), Ex. L ("Plaintiff Depo.") at 52:17-53:14. The Handbook prohibits discrimination and harassment based on gender, sex, sexual orientation, pregnancy, childbirth or related medical conditions, race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, citizenship status, marital status, military or veteran status, age, or other protected characteristic which violates local, state and/or federal law, and includes policies regarding proper time keeping, uniforms and appearance, use of company and client property, and actions that warrant immediate termination—including misuse of client property, insubordination or derogatory behavior, falsification of company records, disruptive or inappropriate conversations at work, and use of alcohol on company premises. Klomp Decl. ¶ 8, Ex. D at 17-20, 100-105, 113. The Handbook also stated that employees' pay may fluctuate based on assignment. *Id.* ¶ 8, Ex. D at 73. Plaintiff understood that different accounts or sites had different pay rates pursuant to their contracts with Securitas. Plaintiff Depo. at 196:19-22. From April 2019 through January 2020, Torres worked for the Securitas Healthcare Region at Kaiser Permanente sites in San Francisco. Klomp Decl. ¶ 6.

### B. Amazon Placement and Move to Wells Fargo

In January 2020, Plaintiff was transferred to the Pacific Region, and he was assigned to the client site Amazon Inc. ("Amazon") as a site supervisor. Klomp Decl. ¶ 6; Plaintiff Depo. at 41:14-17. In this position, he was the highest-ranking Securitas employee at the site. Declaration of Kunjan Desai, ECF No. 31-5 ("Desai Decl.") ¶ 3; Plaintiff Depo. at 47:17-19. Plaintiff

1  supervised two private security officers ("PSOs") during each shift.  Desai Decl. ¶ 3; Plaintiff

2  Depo. at 42:8-10.

3        In October 2020, the Amazon Area Security Manager Andrew LoCicero requested that

4  Plaintiff be removed from the Amazon facility based on his performance.  Desai Decl. ¶ 6;

5  Declaration of Whitley Beasley, ECF No. 31-6 ("Beasley Decl.") ¶ 6, Ex. A.  Plaintiff had failed

6  to report policy violations committed by his subordinates to the District Manager or Watch

7  Commander.  Beasley Decl. ¶ 6, Ex. A.  Throughout Plaintiff's placement at Amazon, Kunjan

8  Desai, a Securitas Program Director, had multiple conversations with LoCicero in which LoCicero

9  complained about Plaintiff's performance, including failures of reporting priority incidents to the

10 chain of command at Securitas, overall customer service failures, and an inability to follow

11 procedures.  Desai Decl. ¶ 6.

12       The Securitas Area Human Resources Office recommended counseling Torres while an

13 adequate replacement was found.  Desai Decl. ¶ 7; Klomp Decl. ¶ 9.  Securitas began the search

14 for a replacement and in February 2021, when an adequate replacement was found, Defendant

15 removed Plaintiff from Amazon and transferred him to a new site, Wells Fargo.  Desai Decl. ¶ 7;

16 Klomp Decl. ¶ 9.  On February 18, 2021, Plaintiff's last day assigned to Amazon Desai wrote:

17 "[t]he removal of Torres from site is coming from repeated client requests.  As mentioned in the

18 past, . . . we have had at least 6 different incidents in the past 6 months that have pushed us to

19 make this decision."  Klomp Decl. ¶ 10, Ex. F.  The Wells Fargo position was the closest open

20 post to Plaintiff's previous position considering Plaintiff's pay and stated travel restrictions; there

21 was a reduction in pay from $25.00/hour to $22.00/hour.  *Id.* ¶ 9.  Securitas did not have any

22 intention of terminating Plaintiff's employment at that time.  *Id.*

23       **C.    Investigation**

24       While assigned to the Amazon facility, Plaintiff communicated with other members of the

25 security team using Amazon's internal instant messaging software, Chime.  Klomp Decl. ¶ 11.

26 Amazon can monitor Chime messages, but Securitas HR personnel cannot.  *Id.*  Plaintiff

27 understood that Chime was to be used for business purposes only and that it was his responsibility

28 as site supervisor to discipline PSOs who used Chime to send inappropriate messages.  Plaintiff

1    Depo. at 64:17-19, 66:2-7.

2        After his removal from Amazon and contrary to company policy, Plaintiff continued to use

3    Chime to communicate with his former subordinates at the Amazon site.  Klomp Decl. ¶ 13.

4    Amazon notified Securitas of the violation in late February 2021.  *Id.*; Desai Decl. ¶ 8, Ex. H.

5        On March 5, 2021, Jorge Venegas, a security officer who Plaintiff had supervised at the

6    Amazon site, made a complaint to Securitas about Plaintiff's behavior.  Klomp Decl. ¶ 12.

7    Securitas conducted an investigation into Plaintiff's conduct at Amazon.  *Id.* ¶¶ 12-18, Ex. B.  As

8    part of his complaint, Venegas provided to Defendant copies of pages of Chime messages

9    involving Defendant.  *Id.* ¶ 12, Ex. G.

10       Defendant conducted an HR investigation, which  revealed Plaintiff frequently engaged in

11   activities in violation of SUSA's policies.  *See* Klomp Decl. ¶¶ 12-18, Ex. G.  Plaintiff admitted

12   that he used Chime to communicate with Venegas regarding non-work-related matters, including

13   by sending pornographic material and using profanity.  Plaintiff Depo. at 64:17-66:18.

14       On May 11, 2020, Plaintiff sent a Chime message to Venegas suggesting he was planning

15   to leave his post: "Think I should take it and just pick up my daughter and be [back] by 1800?"

16   Klomp Decl. ¶ 12, Ex. G.  Plaintiff continued the conversation, asking Venegas not to reveal he

17   had left and to "keep it on the DL."  *Id.*

18       On July 2, 2020, Plaintiff sent messages to Venegas stating, "stupid bitch I fucking hate

19   her" and "let's see what the bitch says," in reference to his female supervisor, District Manager

20   Whitley Beasley.  Klomp Decl. ¶ 12, Ex. G; Plaintiff Depo. at 244:12-246:2; 247:24-248:16.

21       On July 1, 2020, Plaintiff and Venegas discussed a new female trainee who came to the

22   site to complete paperwork over Chime.  Klomp Decl. ¶ 12, Ex. G.  They compared her to actress

23   "S[a]lma [Hayek] when she was 17-18."  *Id.*  Plaintiff further remarked about the new trainee's

24   physical appearance exclaiming, "definitely a goddess for sure!"  *Id.*  When asked about the

25   comments during his deposition, Plaintiff responded, "that was a joke because Jorge [Venegas] is

26   really into [Salma Hayek]."  Plaintiff Depo. at 235:5-236:16.

27       That same day, Plaintiff wrote that he planned to come to Amazon on his day off "for a

28   couple hours and cook some food and play some cards."  Klomp Decl. ¶ 12, Ex. G.  Plaintiff

4

United States District Court
Northern District of California

1    admitted he wrote these messages.  Plaintiff Depo. at 238:23- 242:20.

2            On September 29, 2020, Plaintiff wrote about the multiple times he "covered" for officers

3    and chose not to issue write ups, creating open posts: "You have been late like 90% of your shifts

4    man.  And I never trip.  What[,] I don't cover for Leonor until 5[?] and I have to take off early on

5    Fridays to pick up my daughter that's no big secret.  And what[,] do I not let Steven go home to

6    take out his dog[?].  Do I not make the schedule for David to get o.t and have the the [sic] days he

7    wants off [?].  So I don[']t see how anyone can say shit about me not helping out and no it

8    wouldn't be missing hours you'd be fired already.  But I'm not like Nick and I know life happens

9    and I know you're a good dude and you have helped me out to so I don[']t see what place your trip

10   is coming from but if you have a problem with the way I run things you can talk to Whitley or

11   Rios."  Klomp Decl. ¶ 12, Ex. G.  On October 28, 2020, Plaintiff, in a message to Venegas, stated

12   he was "letting [him] be late easily 80-% of [his] shifts?"  *Id.*  This suggested to Defendant that

13   Plaintiff allowed his subordinates to record time they were actually not working.  *Id.*

14           On December 31, 2020, when Venegas was leaving early, at 8:00 p.m., Torres wrote,

15   "Man you can write 2030 [on your timesheet] I don't care."  Klomp Decl. ¶ 12, Ex. G.

16           Plaintiff also made comments on Chime based on PSOs' race and national origin.  Klomp

17   Decl. ¶ 12.  In one example, Plaintiff wrote about a PSO he refers to as "the Russian," stating,

18   "watch out he survived Communism and the cold war I don't want him to Snipe you."  *Id.*  On

19   July 1, 2020, Plaintiff wrote, "I wonder if any officer would even notice if I keep the same picture

20   for all the Asian dudes but use a different name?"  *Id.*  When asked about the statement during his

21   deposition testimony, Plaintiff acknowledged he wrote the statement and that he could see how it

22   could be discriminatory in nature.  Plaintiff Depo. at 236:21-238:22.

23           As part of his duties, Plaintiff was required to review timesheets for accuracy, and ensure

24   that PSOs stationed at the Amazon facility arrived to and left their posts on time based on the pre-

25   set schedule.  Beasley Decl. ¶ 5.  SUSA required PSOs stationed at the Amazon facility to remain

26   at the facility during their meal and rest breaks, as they were paid breaks.  *Id.*  Plaintiff testified

27   that as the highest-level SUSA employee at the Amazon facility, he understood he was responsible

28   for making sure the officers he supervised performed their jobs, reported to work on time, did not

5

take extensive breaks, and accurately filled out their timesheets.  Plaintiff Depo. at 42:19-21, 46:9-12, 47:10-13, 48:18-21.

Plaintiff allowed the PSOs to leave the site, leaving an open post and no PSO available to respond in case of an emergency.  Klomp Decl. ¶ 12.  On February 18, 2020, in a Chime message between Plaintiff and Venegas, Plaintiff wrote, "I am 100% ok with people going outside for lunch as long as they stay withi[n] a few blocks in case shit goes south."  *Id.* ¶ 12, Ex. G.  This was contrary to SUSA's directive that PSOs at the site remain at the facility for their 30-minute on-duty meal periods.  *See* Beasley Decl. ¶ 5.

Based on Plaintiff's Chime messages, SUSA was prompted to verify the hours Plaintiff claimed he worked while positioned at Amazon from December 2020 to January 2021. Declaration of David Hull, ECF No. 31-2 ("Hull Decl.") ¶ 5.  To do so, Plaintiff's timesheets were compared with his badge swipe in/out times to access the facility.  *Id.* ¶¶ 6-8, Ex. J; Plaintiff Depo. at 97:14-22.  After comparing the records, Klomp came to the conclusion Plaintiff had falsified his timesheets, and as a result was paid for over 33.18 hours he did not work during the span of two months.  Hull Decl. ¶ 8.

On March 24, 2021, as part of her investigation, Gina Klomp, Defendant's Area Human Resources Manager, interviewed Plaintiff.  Klomp Decl. ¶ 14.  During the investigation as well as in his deposition, Plaintiff admitted he brought alcohol to the work site and drank the alcohol at the site.  *Id.* ¶ 15; *see* Plaintiff Depo. at 238:23-242:20.  Defendant's policies prohibit the use of alcohol on company property.  Klomp Decl., Ex. D at 23.  During the investigation, Plaintiff also admitted he left the client site early and falsified his time records "a couple of times."  *Id.* ¶ 15. Klomp also informed Plaintiff his timesheets were compared to his badge in/out swipes and it was determined he falsified over 33 hours in two months.  *Id.*; Hull Decl. ¶ 8; Ex. J; *see* Plaintiff Depo. at 116:12-15.

### D.   Termination

Based on the results of this investigation, Klomp and Joel Hayes, the Pacific Region's Employee Relations Manager, decided to terminate Plaintiff's employment.  Klomp Decl. ¶ 19. Plaintiff's last day assigned to a post was March 29, 2021.  *Id.* ¶ 16.  That day, SUSA notified

United States District Court
Northern District of California

1    Plaintiff he was suspended, pending further investigation.  Hull Decl. ¶ 10; Ex. K.  SUSA

2    instructed Plaintiff not to report for duty until further notice.  *Id.*

3         Before terminating Plaintiff's employment, Klomp contacted other employees who were in

4    contact with Plaintiff daily to verify the violations revealed in the Chime messages.  Klomp Decl.

5    ¶ 16.  On April 1, 2021, Klomp notified Plaintiff of the termination of his employment after the

6    conclusion of the investigation which revealed he exhibited inappropriate conduct and violated

7    company policies.  *Id.* ¶ 17, Ex. I.

8         **E.    Plaintiff's Allegations**

9         As stated above, Plaintiff has provided no evidence to create a dispute of fact as to

10   Defendant's motion.  The Court will summarize the allegations in Plaintiff's complaint.  Plaintiff

11   alleges that he was "wrongfully terminated for properly reporting breaches of security protocol, in

12   addition to breaches of covid-related screening protocols intended to protect the health of on-site

13   employees."  ECF No. 1, Ex. 1 ("Compl.") ¶ 8.  The Court does not consider these allegations as

14   evidence but recites them only to give context to Defendant's argument and evidence in support of

15   its motion.

16        Plaintiff identifies a few incidents.  First, he alleges that on or about October 2020, he was

17   off-duty when an officer called him, informing him that there was a breach of security protocol at

18   the Amazon facility.  Compl. ¶ 9.  Plaintiff alleges that he called his supervisor without success, so

19   he reached out to Dierdre De Meideros and Robert Lackey, Amazon corporate security managers.

20   *Id.*  After the incident, Plaintiff's supervisor Jesus Rios allegedly told him to file a Securitas

21   incident report and not to tell Amazon about the breach.  *Id.*  Soon thereafter, the Securitas team

22   found a laptop left unattended at the Amazon location, so Plaintiff contacted his supervisor, who

23   removed the laptop.  *Id.* ¶ 10.  Torres alleges that his supervisor told him not to report the incident

24   to Amazon.  *Id.*

25        Plaintiff then alleges that, on or about December 2020 to January 2021, he told De

26   Meideros and Lackey that Securitas management often hid security breaches.  Compl. ¶ 11.

27   Lackey then launched an investigation and found other warehouses where Securitas officers were

28   told not to tell Amazon about security violations.  *Id.*

United States District Court
Northern District of California

1    Plaintiff also alleges that, on or about February 12, 2021, there was an incident in which
2    Amazon employees were caught using other employees' badges and evading Covid-19 screenings.
3    Compl. ¶ 12.  Plaintiff alleges that he called the Watch Commander twice, attempted to message
4    Rios, and tried to call his captain, but he was unable to reach any of them.  *Id.*  He then allegedly
5    called De Meideros and Lackey to report the incident.  *Id.*

### F.    Procedural History

7    On August 13, 2021, Plaintiff filed suit against Defendant in Santa Clara County Superior
8    Court.  *See* ECF No. 1.  He brings a cause of action in violation of Labor Code § 1102.5.  *See id.*
9    Defendant filed an Answer on November 9, 2021.  *See id.*  On November 10, 2021, Defendant
10   removed the action to this Court.  *See id.*

11   On February 13, 2023, Defendant filed the instant motion.  *See* MSJ.

## II.    LEGAL STANDARD

13   "A party is entitled to summary judgment if the 'movant shows that there is no genuine
14   dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *City of*
15   *Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P.
16   56(a)).  "The moving party initially bears the burden of proving the absence of a genuine issue of
17   material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*
18   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "Where the non-moving party bears the burden of
19   proof at trial, the moving party need only prove that there is an absence of evidence to support the
20   non-moving party's case."  *Id.* (citing *Celotex*, 477 U.S. at 325).

21   "Where the moving party meets that burden, the burden then shifts to the non-moving
22   party to designate specific facts demonstrating the existence of genuine issues for trial."  *Oracle*,
23   627 F.3d at 387 (citing *Celotex*, 477 U.S. at 324).  "[T]he non-moving party must come forth with
24   evidence from which a jury could reasonably render a verdict in the non-moving party's favor."
25   *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  "The court must view the
26   evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the
27   nonmovant's favor."  *City of Pomona*, 750 F.3d at 1049 (citing *Clicks Billiards Inc. v. Sixshooters*
28   *Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001)).  "Where the record taken as a whole could not lead a

United States District Court
Northern District of California

8

1    rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Id.* at

2    1049-50 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

3    (1986)).

4    **III.    ANALYSIS**

5          Defendant brings a motion for summary judgment on Plaintiff's sole claim for retaliation

6    in violation of California Labor Code § 1102.5.  *See* MSJ.

7          **A.    Statutory Framework**

8          "Section 1102.5 provides whistleblower protections to employees who disclose

9    wrongdoing to authorities."  *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 709

10   (2022).  "As relevant here, section 1102.5 prohibits an employer from retaliating against an

11   employee for sharing information the employee 'has reasonable cause to believe . . . discloses a

12   violation of state or federal statute' or of 'a local, state, or federal rule or regulation' with a

13   government agency, with a person with authority over the employee, or with another employee

14   who has authority to investigate or correct the violation."  *Id.* (quoting Cal. Labor Code §

15   1102.5(b)).  Section 1102.5 "reflects the broad public policy interest in encouraging workplace

16   whistle-blowers to report unlawful acts without fearing retaliation."  *Id.* (quoting *Green v. Ralee*

17   *Eng'g Co.*, 19 Cal. 4th 66, 77 (1998)).  "An employee injured by prohibited retaliation may file a

18   private suit for damages."  *Id.*

19         The California Supreme Court recently clarified that "[California Labor Code] section

20   1102.6, and not *McDonnell Douglas*, supplies the applicable framework for litigating and

21   adjudicating section 1102.5 whistleblower claims."  *Lawson*, 12 Cal. 5th at 712.  Section 1102.6

22   sets forth a two-step framework.  *See id.*  "First, it places the burden on the plaintiff to establish,

23   by a preponderance of the evidence, that retaliation for an employee's protected activities was a

24   contributing factor in a contested employment action."  *Id.* at 718.  "Once the plaintiff has made

25   the required showing, the burden shifts to the employer to demonstrate, by clear and convincing

26   evidence, that it would have taken the action in question for legitimate, independent reasons even

27   had the plaintiff not engaged in protected activity."  *Id.*

28         Securitas argues that it is entitled to summary judgment at both steps of the two-step

United States District Court
Northern District of California

1    framework under § 1102.6.  Plaintiff argues that disputed facts preclude summary judgment.

2          **B.    Step One**

3          Defendant argues that it is entitled to summary judgment because (1) Torres did not

4    engage in protected activity and (2) there is no causal connection between the alleged protected

5    activity and the adverse employment action.  MSJ at 13-18.  The Court will address each argument

6    in turn.

7               **1.  Protected Activity**

8          Defendant argues that Plaintiff did not engage in any protected activity.  MSJ at 13-17.

9    Section 1102.5 provides:

10               An employer, or any person acting on behalf of the employer, shall
                 not retaliate against an employee for disclosing information, or
11               because the employer believes that the employee disclosed or may
                 disclose information, to a government or law enforcement agency, to
12               a person with authority over the employee or another employee who
                 has the authority to investigate, discover, or correct the violation or
13               noncompliance, . . . if the employee has reasonable cause to believe
                 that the information discloses a violation of state or federal statute, or
14               a violation of or noncompliance with a local, state, or federal rule or
                 regulation, regardless of whether disclosing the information is part of
15               the employee's job duties.

16   Cal. Labor Code § 1102.5(b).  Defendant argues that Plaintiff cannot show retaliation because he

17   did not disclose any violations of law and he did not disclose the information to an applicable

18   individual.  MSJ at 14-17.  The Court will address each argument.

19         First, Defendant argues that Plaintiff reported security breaches, not violations of law.

20   MSJ at 14-17.  The statute forbids retaliation against an employee for disclosing information if the

21   employee has "reasonable cause to believe that the information discloses a violation of state or

22   federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."

23   Cal. Labor Code § 1102.5(b).  "An employee engages in protected activity when he 'discloses . . .

24   reasonably based suspicions of *illegal activity*.'"  *Fitzgerald v. El Dorado Cnty.*, 94 F. Supp. 3d

25   1155, 1172 (E.D. Cal. 2015) (quoting *Mokler v. Cnty. of Orange*, 157 Cal. App. 4th 121, 138

26   (2007)) (emphasis in original).  "The employee must 'reasonably believe []he was disclosing a

27   violation of state or federal law.'"  *Id.* (quoting *Patten v. Grant Joint Union High Sch. Dist.*, 134

28   Cal. App. 4th 1378, 1386 (2005)) (alteration in original).  "To have a reasonably based suspicion

United States District Court
Northern District of California

of illegal activity, the employee must be able to point to some legal foundation for his suspicion—some statute, rule or regulation which may have been violated by the conduct he disclosed." *Id.* (citing *Love v. Motion Indus., Inc.*, 309 F. Supp. 2d 1128, 1135 (N.D. Cal. 2004)).  "The employee must have an actual belief that the employer's actions were unlawful and the employee's belief, even if mistaken, must be reasonable." *Tam v. Qualcomm, Inc.*, 300 F. Supp. 3d 1130, 1148 (S.D. Cal. 2018) (citing *Carter v. Escondido Union High Sch. Dist.*, 148 Cal. App. 4th 922, 933-34 (2007)).

In his opposition brief, Plaintiff points to California Labor Code § 6400, which provides: "Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein."  MSJ Opp. at 4 (citing Cal. Labor Code § 6400(a)).  He argues that he notified Amazon of breaches of security protocols and Covid-19 screening protocols, which could implicate a reasonable belief that the law requiring a safe and healthful workplace were being violated.  *Id.*  The Court recognizes that Covid-19 screening protocols were important to workplace health and safety.  But Plaintiff does not provide any evidence that he believed that there was any violation of law.  There is no declaration by Plaintiff.  The Court does not even get to the question of whether any belief was reasonable, because Plaintiff has not provided any evidence that he had a belief that he was reporting illegal activity.  Attorney argument is not sufficient.

Second, Defendant argues that Plaintiff did not report the alleged violation to anyone covered by the statute.  MSJ at 17.  The statute forbids retaliation against an employee who makes a report "to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance."  Cal. Labor Code § 1102.5(b).

Here, Plaintiff alleges he made the report to Lackey and De Meideros.  Compl. ¶¶ 9-12. Defendant provides evidence that neither is an Amazon corporate security manager, as alleged by Defendant.  Desai Decl. ¶ 9.  Lackey was a security manager employed by a third-party vendor, Touchstone Global.  *Id.*  Plaintiff stated that he was aware that he did not work for Lackey. Plaintiff Depo. at 85:2-6.  Both Klomp and Desai state in declarations that Lackey did not have

authority over Torres.  Desai Decl. ¶ 9; Klomp Decl. ¶ 21.  He also was not "another employee who ha[d] the authority to investigate, discover, or correct the violation or noncompliance."  First, he was not an employee of Securitas.  And further, Desai states in a declaration that Lackey had no authority to investigate any alleged security breaches that Plaintiff reported.  Desai Decl. ¶ 9. Defendant also provides that De Meideros was an executive assistant employed by Amazon.  *Id.* Desai and Klomp both state in declarations that she had no influence over Torres's employment with Securitas.  *Id.*; Klomp Decl. ¶ 21.  Nor was she "another employee who ha[d] the authority to investigate, discover, or correct the violation or noncompliance."  Plaintiff provides no evidence to create a dispute of fact that either Lackey or De Meideros had any authority over him.  Nor does he provide any evidence that Lackey or De Meideros were employees with authority to investigate, discover, or correct any reported violation.

The Court determines that Plaintiff has not created a dispute of fact as to whether he engaged in protected activity.

### 2.  Causal Connection

Defendant argues that there is no causal nexus between the alleged protected activity and the alleged adverse employment action.  MSJ at 18.  Defendant argues that there was no causal connection as to either Torres's removal from the Amazon facility or his termination from Securitas.  *Id.*  Torres does not argue that his move from the Amazon facility to Wells Fargo was an adverse employment action; his argument is only as to his termination.  *See* MSJ Opp.  The Court will therefore focus on that issue.

Defendant argues that there was no causal connection between Torres's alleged protected activity and his termination from Securitas.  MSJ at 18.  Securitas asserts that he was terminated due to the investigation and nothing else.  *Id.*  Further, Securitas argues that Klomp and Hayes, who made the decision to terminate Plaintiff's employment, were not aware of the reports that Plaintiff had allegedly made to the individuals at Amazon when they made the decision to terminate his employment.  *Id.*

Only at the hearing did Plaintiff raise for the first time that he was entitled to an inference of causation due to the temporal proximity between the alleged reports and his termination.  The

1   Court allowed supplemental briefing, in which Plaintiff argues that the temporal proximity of his

2   alleged protected activity and termination is sufficient to create a triable issue of fact as to

3   causation.  ECF No. 38 ("PSupp.").  He argues that because he made a report in February 2021

4   and his employment was terminated in April 2021, the Court can infer a causal connection.  *Id.*

5        In the context of a retaliation claim brought under Title VII of the Civil Rights Act, the

6   Ninth Circuit stated, "[t]hat an employer's actions were caused by an employee's engagement in

7   protected activities may be inferred from 'proximity in time between the protected action and the

8   allegedly retaliatory employment decision.'"  *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir.

9   2000) (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)).  And in another Ninth

10  Circuit case, in which the plaintiff brought suit under Title VII and Washington state law, the

11  Ninth Circuit recognized that it has "held that causation may be established based on the timing of

12  the relevant actions."  *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493,

13  507 (9th Cir. 2000).  It went on to explain that "when adverse employment decisions are taken

14  within a reasonable period of time after complaints of discrimination have been made, retaliatory

15  intent may be inferred."  *Id.*  Plaintiff also points the Court to one state court case brought under

16  the California Fair Employment and Housing Act in which the court determined there was

17  "sufficient circumstantial evidence from which a trier of fact could conclude that there is a causal

18  link," including the fact that the plaintiff was terminated only a few months after the protected

19  activity, even though he had worked for the company for four years.  *Flait v. N. Am. Watch Corp.*,

20  3 Cal. App. 4th 467, 478 (1992).

21       But the Ninth Circuit has also recognized, again in the context of a Title VII claim, that

22  "[e]ssential to a causal link is evidence that the employer was aware that the plaintiff had engaged

23  in the protected activity."  *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).  Plaintiff

24  has not pointed to any case law to show that temporal proximity is sufficient to show a causal link

25  even when there is no dispute of fact that the individuals who made the decision to terminate did

26  not have knowledge of the alleged protected activity.  In one of the cases that Plaintiff cites,

27  discussed above, the court recognized there was "sufficient circumstantial evidence from which a

28  trier of fact could conclude that there is a causal link."  *Flait*, 3 Cal. App. 4th at 478.  The court

United States District Court
Northern District of California

considered the close temporal proximity, but it also pointed to evidence "that the same highly placed corporate officer who made the offending comments was also responsible for [plaintiff's] termination, which is probative of [defendant company's] knowledge that [plaintiff] had engaged in protected activity. *Id.* Here, Klomp states in a declaration that only she and Hayes were involved in the decision to terminate Plaintiff, and she was not aware of his alleged reports to Amazon at the time that they made the decision to terminate his employment.  Klomp Decl. ¶¶ 17-20.  Torres has not provided any evidence to create a dispute of fact on this issue.

The Court is not convinced that temporal proximity is sufficient to create a dispute of fact as to whether there was a causal connection in the absence of any dispute of fact as to knowledge. But the Court need not rely on this determination, as it already found there was no protected activity.

\* \* \* \* \*

Here, there is no dispute of fact as to whether retaliation for protected activities was a contributing factor in Plaintiff's termination.  Defendant is therefore entitled to summary judgment.

### C.   Step Two

Defendant also argues that it is entitled to summary judgment on step two of the retaliation analysis.  MSJ at 18-20.  Having concluded that Defendant is entitled to summary judgment at step one, the Court need not reach step two.  But it will do so for the sake of completeness.

At step two, the employer has the burden of proof to demonstrate by clear and convincing evidence that it would have taken the alleged adverse action for legitimate, independent reasons even had the plaintiff not engaged in protected activity.  *See Lawson*, 12 Cal. 5th at 718.  And Defendant has clearly met that burden here.

The Securitas Security Officer Handbook, of which Plaintiff also acknowledged receipt, prohibits discrimination and harassment based on a variety of protected characteristics, and it includes policies regarding proper time keeping and use of company and client property.  *See* Klomp Decl. ¶ 8, Ex. D; Plaintiff Depo. at 52:17-53:14.  It also identifies actions that warrant immediate termination—including misuse or inappropriate use of client property, insubordination

United States District Court
Northern District of California

or derogatory behavior, falsification of company records, disruptive or inappropriate conversations at work, and use of alcohol on company premises.  Klomp Decl., Ex. D at 100-103.  Here, Defendant has provided evidence that Torres used alcohol on company premises.  Klomp Decl. ¶ 15; Plaintiff Depo. at 238:23-242:20.  Defendant has also provided evidence that Plaintiff falsified his own timecards, resulting in over 33 hours of extra pay for work not performed over a two-month period.  Klomp Decl. ¶ 15; Hull Decl. ¶ 8, Ex. J.  Defendant has submitted evidence that Plaintiff continued to use Chime after being moved from the Amazon facility.  Klomp Decl. ¶ 13; Desai Decl. ¶ 8, Ex. H.  Defendant also submitted evidence that Plaintiff had conversations and made comments on Chime that would constitute "inappropriate conversations" and/or "derogatory behavior," such as sending pornographic materials, using profanity, referring to his supervisor as a "bitch," and asking "if any officer would even notice if [he] ke[pt] the same picture for all the Asian dudes."  Klomp Decl. ¶ 12, Ex. G; Plaintiff Depo. at 64:17-66:18, 236:21-238:22, 244:12-246:2, 247:24-248:16.  Plaintiff has submitted no evidence to create a dispute of fact that any of these incidents occurred.

Securitas has shown by clear and convincing evidence that it would have terminated Torres for legitimate, independent reasons, despite any alleged protected activity by Plaintiff.

### D.    Conclusion

Based on the foregoing, the Court concludes that Securitas has met its burden on summary judgment to establish that no reasonable jury could find for Torres on his § 1102.5 claim, and that Torres has not met his burden on summary judgment to demonstrate the existence of disputed facts that would preclude summary judgment.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.

Dated:  April 17, 2023

_____
BETH LABSON FREEMAN
United States District Judge